UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| ADAM JOSE VALDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:10-CV-0439-Y |
| | § | |
| PENTAGROUP FINANCIAL, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S NOTICE AND AMENDED MOTION FOR ATTORNEY'S FEES AND COSTS

**NOTICE IS HEREBY GIVEN** that pursuant to this Honorable Court's Order dated October 3, 2011 [DE 74], Plaintiff, ADAM JOSE VALDEZ ("Plaintiff"), files his Amended Motion for Attorney's Fees and Costs. Plaintiff's Amended Motion for Attorney's Fees and Costs comes pursuant to Court Order and is based upon this notice, the memorandum of points and authorities, and the exhibits attached hereto, and all files, pleadings and records in this action.

Dated:     December 1, 2011               KROHN & MOSS, LTD.

                                          By: /s/ Adam T. Hill
                                              Adam T. Hill
                                              KROHN & MOSS, LTD.
                                              10 N. Dearborn St., 3rd Fl.
                                              Chicago, Illinois 60602
                                              Telephone:  312-578-9428
                                              Telefax:  866-802-0021
                                              ahill@consumerlawcenter.com
                                              Attorney for Plaintiff
                                              *Appearing pro hac vice*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    BACKGROUND**

On June 21, 2010, Plaintiff, by and through his attorneys Krohn & Moss, Ltd. ("K&M"), brought suit pursuant to provisions of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*. ("FDCPA") [DE 1]. Plaintiff sought statutory damages, and all reasonable attorney's fees and costs incurred for Defendant's violations of the FDCPA.

On October 3, 2011, at the pretrial hearing, the parties reached a bifurcated settlement agreement to resolve the dispute between them [DE 74]. The bifurcated agreement between the parties allowed for Plaintiff to recover the maximum of $1,000.00 in statutory damages under the FDCPA, and allowed Plaintiff to bring the instant motion for attorneys' fees and costs. Per the terms of the agreement, and as stated in open Court, Defendant does not concede that Plaintiff is the prevailing party for purposes of entitlement to fees under the FDCPA, but would limit its argument of entitlement based on settlement negotiations and a potential *bona fide* error defense. Plaintiff now brings the instant Motion seeking an award of attorney's fees and costs of $30,547.50.

**II.   PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY'S FEES PURSUANT TO THE FDCPA**

The specific statutory language of the FDCPA, and the public policy considerations in support of this Act, entitle Plaintiff to the recovery of attorney's fees and costs in this matter. The FDCPA states, in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable … in the case of any successful action to enforce the foregoing liability, ***the costs of the action, together with a reasonable attorney's fee*** as determined by the court.

15 U.S.C. § 1692k(a) (emphasis added).

It is well-settled that "[a]ttorneys' fees requests in the Fifth Circuit are governed by the 'lodestar' analysis.'" *Turner v. Oxford Management Services, Inc.,* 552 F. Supp. 2d 648, 650 (S.D. TX 2008) *citing Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). "The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorney(s) and the attorney(s)' reasonable hourly billing rate." *Turner*, 552 F. Supp. 2d at 650 *citing Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002); *see also Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). "In setting a reasonable billing rate, courts are directed to consider the attorney(s)' **regular rates** as well as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Turner,* 552 F. Supp. 2d at 650 *citing Blum v. Stenson*, 465 U.S. 886, 896, n. 11 (1984); *La. Power & Light Co. v. Kellstrom*, 50 F. 3d 319, 328 (5th Cir. 1995) (emphasis added). Where "the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so." *Islamic Center of Miss. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

The Northern District Court of Texas has recognized the importance of the fee-shifting provision of the FDCPA, as well as the public policies behind it. In holding that the award of attorney's fees and costs is mandatory in a case arising under the FDCPA, the Northern District Court of Texas held:

> 15 U.S.C. § 1692k(a)(3) requires this Court to award McNeill reasonable attorney's fees resulting from GBS and Shytles' violation of the FDCPA. *See Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir. 1991) (finding an award of attorney's fees mandatory, even where violations were so minimal that statutory damages were not warranted).

*McNeill v. Graham, Bright & Smith, P.C.*, 2006 WL 1489502 at *3, n. 6 (N.D. Tex. 2006). Other United States Courts of Appeals for the Federal Circuit have consistently held the same view. In holding that a separate award for attorney's fees and costs is mandatory, the Seventh Circuit Court of Appeals held:

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, ***the act mandates an award of attorney's fees as a means of fulfilling Congress's intent*** that the Act should be enforced by debtors acting as private attorneys general.

*Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir. 1995) (emphasis added). The Ninth Circuit Court of Appeals and the Third Circuit Court of Appeals are also in agreement with this view. In holding that the award of attorney's fees and costs is mandatory by the district courts, the Ninth Circuit held, "[t]he ***FDCPA's statutory language makes an award of fees mandatory***. The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *see also Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) (noting that the FDCPA mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general).

The *Tolentino* court, citing the Supreme Court of the United States, also noted Congress's specific intent to allow an individual plaintiff the ability to pursue an action where the burden of costs and fees would otherwise economically preclude this type of rights enforcement. *See Tolentino*, 46 F.3d at 652 *citing City of Riverside v. Rivera*, 477 U.S. 561 (1986). "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Id.* The Ninth Circuit held similarly in

4

*Camacho* when it rejected the district court's "flat fee" approach, and in its remand for further findings, directed that "the amount of [attorney's fees] must be determined on the facts of each case." *Camacho*, 523 F.3d at 978. Further, as discussed *infra*, in consumer protection cases, the amount of attorney's fees and costs is often higher than the underlying amount of damages recovered by the plaintiff.

Accordingly, the FDCPA mandates that the recovery of Plaintiff's attorney's fees and costs is integral to the success of the policy goals of the FDCPA. By virtue of the bifurcated settlement agreement of the parties, Plaintiff has prevailed in this matter and should be awarded reasonable attorney's fees and costs as determined by this Court.

### III.     PUBLIC POLICY SUPPORTS AN AWARD OF COSTS AND ATTORNEY'S FEES

"The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. Congress found such abuses by debt collectors to be serious and widespread." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) *citing* 15 U.S.C. § 1692(e) and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996). The fee-shifting provision contained in the FDCPA, therefore, enables consumers to vindicate their personal rights and while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices.

Further, the difficulty in private attorneys general actions, such as the FDCPA, is that the potential for recovery is not clear at the time the litigation is commenced, unlike in personal injury actions. *See Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983). Additionally, the amount in controversy is usually too small to induce an attorney to commence

litigation on a percentage contingency. Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc*., 287 Ill.App.3d 719, 680 N.E.2d 416 (Ill. Ct. App. 1997); *see also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 488 (Ky. Ct. App. 1978). By providing the private bar with an incentive to involve itself in consumer litigation through the fee-shifting provision, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Without a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would simply not make the consumer whole as the average consumer would simply be unable to pay his attorney's fees and costs. This result would create a deterrent for the private bar to pursue an action for which Congress has so emphatically dictated the importance. This sort of "chilling effect" would counter the purpose of the statute, which, when coupled with the provision awarding attorney's fees, "is to encourage consumers to file actions to vindicate their rights." *Grove v. Huffman*, 262 Ill. App.3d 531, 539, 634 N.E. 2d 1184, 1190 (Ill. Ct. App. 1994). The attorney's fees provision is in place to remove the difficulty of obtaining counsel in pursuing claims, which are relatively small compared to potential legal costs. *See id.* at 539. As a result, public policy dictates that attorney's fees should be paid by Defendant.

**IV.     IN CONSUMER PROTECTION ACTIONS, IT IS <u>NOT</u> APPROPRIATE TO ASSESS A FEE AWARD BASED UPON THE PROPORTIONALITY OF THE ATTORNEY'S FEES EXPENDED TO THE AMOUNT OF PLAINTIFF'S RECOVERY**

The Fifth Circuit has recognized that disparity between the plaintiff's award and attorney's fees is the norm in consumer protection cases. "The disparity between the final award of damages and the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims." *Turner*, 552 F. Supp.2d at 656; *see also McNeill v. Graham, Bright & Smith, P.C.*, 2006 WL 1489502, (N.D. TX 2006) ("15 U.S.C. § 1692k(a)(3) **requires** this Court to award McNeill reasonable attorney's fees resulting from GBS and Shytles' violation of the FDCPA") *citing Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) (finding an award of attorney's fees mandatory even where violations were so minimal that statutory damages were not warranted). As such, the attorney's fees awarded should not be reduced to maintain some ratio between the attorney's fees and underlying compensatory damages. Furthermore, courts throughout the nation have recognized that in consumer actions, it is not appropriate to calculate an attorney's fee award based upon the amount recovered by the plaintiff. *See Bryant v. TRW*, 689 F.2d 72 (6th Cir. 1982); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996).[1]

## V.  DEFENDANT'S ANTICIPATED ARGUMENT THAT PLAINTIFF IS NOT ENTITLED TO FEES IS FLAWED

Notwithstanding the aforementioned with respect to Plaintiff's entitlement to fees, it is

---

[1] *See also Krapf v. Nationwide Credit, Inc.*, 2010 WL 4261444, (C.D. Cal. Oct. 21, 2010) (plaintiff's counsel awarded $26,120.40 in fees where underlying matter was settled for $2,000); *Goins v. JBC & Associates, P.C.,* 2006 WL 540332, at *3 (D. Conn. Mar. 6, 2006) (FDCPA plaintiff's counsel awarded $23,421.00 in fees and $895.19 in costs where underlying matter was settled for $1,500); *Dechert ex rel. Estate of Oyler v. The Cadle Co.*, 2004 WL 2999112 (S.D. Ind. Nov. 10, 2004) (FDCPA plaintiff awarded $54,391.00 in fees on a $1,000 statutory recovery); *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (attorney's fees award of $69,872.00 where plaintiff recovered FDCPA statutory damages of $1,000); *Armstrong v. Rose Law Firm, P.A*., 2002 WL 31050583 (D. Minn. Sept. 5, 2002) (attorney's fee award of $43,180.00 where plaintiff recovered FDCPA statutory damages of $1,000); *Minnick v. Dollar Financial Group, Inc.*, Civ. No. 02-1291, 2002 WL 1023101, 52 Fed. R. Serv.3d 1347 (E.D. Pa. May 20, 2002) (plaintiff in FDCPA action awarded $7,208.50 in fees and costs after accepting $2,000 offer of judgment); and *Norton v. Wilshire Credit Corp.*, 36 F.Supp. 2d 216 (D.N.J. 1999) (court awarded $57,000.00 in fees for $5,800 award to plaintiff in FDCPA action).

anticipated that Defendant will argue that Plaintiff is not entitled to attorneys' fees and costs. As stated on the record, it is anticipated that Defendant will present two arguments against Plaintiff's entitlement. Specifically, it is anticipated that Defendant will argue that (1) Plaintiff should not recover fees because Defendant would be entitled to a *bona fide* error defense and that (2) Plaintiff continued litigation in light of offers made by Defendant to settle. Both arguments are without merit.[2]

While Plaintiff intends to fully address the merits of both arguments after receipt and review of Defendant's response brief (where it is anticipated both arguments will be made), it is necessary to address the manner in which settlement discussions occurred in this matter. Plaintiff's Complaint was served via process server on Defendant on June 30, 2010 [DE 4]. On July 21, 2010, Defendant filed its answer [DE 5] and on August 4, 2010, Defendant's general counsel submitted a demand of $1,750.00, inclusive of fees and costs. Plaintiff responded that same day with a counter demand of $3,750.00, inclusive. On August 9, 2010, Defendant responded to Plaintiff's email, accusing Plaintiff of false accusations in his Complaint and rejected Plaintiff's demand. Rather than increase its offer, Defendant "re-issued" its offer of $1,750.00, essentially halting settlement discussions as it was apparent Defendant did not intend to negotiate.

On November 12, 2010, Plaintiff, despite the absence of a new offer from Defendant, reduced his demand to $3,500.00, inclusive. Plaintiff followed up on November 15, 2010 and received Defendant's response on November 16, 2010. Defendant informed Plaintiff that Plaintiff would need to make a "much bigger" reduction for Defendant to be interested in negotiating a potential settlement. On November 19, 2010, the parties held an in-person settlement conference, whereby both parties submitted their reports [DE 22], [DE 23]. At the settlement conference, as

---

[2] Plaintiff reserves the right to address Defendant's arguments in full detail in his reply brief upon receipt of Defendant's

reported, Defendant made an offer of $1,000.00 (slightly more than 57% of its original and only offer in this matter). While Plaintiff found this offer in bad faith, Plaintiff made yet another reduction and made a demand of $3,250.00, inclusive. Defendant responded by issuing for the third time an offer of $1,750.00, at which point the settlement conference ended.

In light of the aforementioned, it is puzzling as to how Plaintiff's conduct would preclude an entitlement to attorneys' fees and costs. However, Plaintiff reserves the right to fully address this issue, as well as address Defendant's *bona fide* error argument, in his reply brief, after having had the chance to review Defendant's response brief articulating its argument.

## VI. THE RATE SOUGHT BY PLAINTIFF'S ATTORNEY IS REASONABLE AND COMMENSURATE WITH HIS EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION

Plaintiff seeks an award of attorney's fees and costs in the amount of $30,547.50, which is comprised of 126.9 hours of attorney and paralegal time at an hourly rate ranging from $405.00 per hour to $125.00 per hour. *See* Statement of Services, attached as Exhibit A to Plaintiff's Appendix (pp. 1-14). Specifically, Plaintiffs seek to recover attorney's fees for Adam Hill at a rate of $255.00 per hour for 70.00 hours, Peter Cozmyk at a rate of $285.00 per hour for 6.0 hours, Kimberly Lucas at a rate of $255.00 per hour for 3.5 hours, and consulting attorneys Scott Cohen, $405.00 per hour for 2.0 hours, Alicia Mandolini, $255.00 per hour for 23.5 hours, Matthew Slodowy, $255.00 per hour for 1.4 hours, and paralegal time at a rate of $125.00 per hour for 20.5 hours. The hourly rate of Plaintiff's attorney delineated in Plaintiff's Statement of Services is commensurate with the attorney's experience and training. This rate is also supported by the 2010-2011 Consumer Law Attorney Fee Survey, the 2007 National Law Journal Survey, the United States Attorney's Office and the "Laffey Matrix," as well as other fee awards from across the nation. *See* Exhibits D through

---

full argument.

F to Plaintiff's Appendix (pp. 32-122).

### A. The Experience of Plaintiff's Attorney Provides Support for the Hourly Rate Requested.

The experience of Plaintiff's attorneys, Adam Hill, Peter Cozmyk and Stacey Lucas, as well as all consulting attorneys, is detailed in biographies and declarations, attached as Exhibits B and C to Plaintiff's Appendix (pp. 15-31).

### B. The Rates Sought by K&M are Reasonable as Evidenced by the 2007 Consumer Law Attorney Fee Survey.

In 2010-2011, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection by an "attorney's years in practice, location of practice, and size of firm." *See* 2010-2011 Consumer Law Attorney Fee Survey, attached as Exhibit D to Plaintiff's Appendix (pp.32-64). The attached survey supports the billing rates requested, as the average billing rate data in the survey, grouped by both region and years in practice, is consistent with those rates. For example, the average billing rate for firms with more then 5 attorneys in Texas where the average regional billing rate is $327.00 per hour. *See* 2010-2011 Consumer Law Attorney Fee Survey, attached as Exhibit D to Plaintiff's Appendix (p. 49). This is substantially more than the rate requested for Plaintiff's attorney, Adam Hill or Peter Cozmyk, at only $255.00 and $285.00 per hour respectively. Further, data collected for the Texas region arranged by years in practice without regard to firm size shows the average rate for attorneys practicing 6-10 years to be $312.00 per hour, and $300.00 per hour for attorneys practicing 3-5 years. *See* 2010-2011 Consumer Law Attorney Fee Survey, attached as Exhibit D to Plaintiff's Appendix (p. 54). As such, the rates requested by Plaintiff's attorneys are commensurate with other consumer attorney's billing rates, indexed by both region and years in practice, and therefore, should be determined by this Court to be reasonable.

>   C.  **The Rate Sought by K&M is Lower Than the Mean Billing Rates Compiled in *The National Law Journal's* 2007 Billing Survey for Associates and Partners in Law Firms Throughout the Country, Including Texas.**

*The National Law Journal's* 2007 Billing Survey also demonstrates the reasonableness of the rates sought by Plaintiff.  For over twenty-five (25) years, *The National Law Journal* has been providing the legal community with news, commentary, and analysis on lawyers and the law.  *See* The National Law Journal's Website at www.law.com/jsp/nlj/utility/about.jsp.  *The National Law Journal* provides timely legal information of national importance to attorneys concerning federal circuit court decisions, verdicts, practitioners' information, legislative issues, and legal news for business and private sectors.  *Id.*  *The National Law Journal's* 2007 survey of billing rates of the largest U.S. law firms provides the High, Average and Low rates for partners and associates at over 100 firms.

As evidenced by taking an average of the Texas law firms surveyed by *The National Law Journal*, the rates charged by Krohn & Moss, Ltd. are commensurate with the rates charged by other firms in Dallas.  These rates reflect the growing increase in rates as charged by law firms in the Texas area.  *See* Article from National Law Journal, attached as Exhibit E to Plaintiff's Appendix (p. 65).  Commenting on the Survey, Leigh Jones of *The National Law Journal* wrote in her December 11, 2007 article for the *Journal*, "billing rates shot up in 2007, with approximately three-quarters of the law firms that participated in *The National Law Journal's* annual survey boosting the amounts they charged for partner and associate services."

>   D.  **The Attorney Rate Sought by Plaintiff is Reasonable as Evidenced by the United States Attorney's Office and the "Laffey Matrix."**

The attorney's fee rate requested by Plaintiff as detailed in Plaintiff's Statement of Services is commensurate with the prevailing rates for attorneys that practice federal law.  As the case at bar

11

was filed pursuant to a federal remedial statute, the FDCPA, rates charged by other attorneys practicing federal law may be compared to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc*., 572 F. Supp. 354, 371 (D.D.C. 1983).  In *Laffey*, the court compared rates of attorneys practicing federal claims with fee-shifting provisions to reach a hybrid rate. *Id*.  The court's analysis in *Laffey* was taken one step further by the Civil Division for the United States Attorney's Office to reflect how rates have changed over the years due to inflation. In doing so, the United States Attorney's Office created the "Laffey Matrix." As demonstrated by the "Laffey Matrix," the rate sought by Plaintiff's attorney herein is commensurate with recognized rates for attorneys with similar experience.  The "Laffey Matrix," when coupled with the declarations presented by Plaintiff provides conclusive evidence that the rate sought by Plaintiff for attorney's fees is reasonable.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act).  The matrix does ***not*** apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

      The "Laffey Matrix" is incorporated into this instant Motion in its entirety:



**Civil Division - LAFFEY MATRIX 2004-2009**

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 |
|---|---|---|---|---|---|
| 20+ years | 390 | 405 | 425 | 440 | 465 |
| 11-19 years | 345 | 360 | 375 | 390 | 410 |
| 8-10 years | 280 | 290 | 305 | 315 | 330 |
| 4-7 years | 225 | 235 | 245 | 255 | 270 |
| 1-3 years | 185 | 195 | 205 | 215 | 225 |
| Paralegals & Law Clerks | 110 | 115 | 120 | 125 | 130 |

The Laffey Matrix clearly illustrates that the rates charged by Krohn & Moss, Ltd. are commensurate with the rates that could have been charged according to United States Attorney's Office. Based on the "Laffey Matrix," and the other authority provided to this Court in Plaintiff's instant Motion, the hourly rates sought by Plaintiff's attorneys are reasonable.[3]

### E. The Rates Sought by K&M have been awarded in Courts Throughout the Country.

The rates sought by Plaintiff's attorneys have been awarded in courts throughout the country. *See Krapf v. Nationwide Credit, Inc.*, 2010 WL 4261444, (C.D. Cal. Oct. 21, 2010) (plaintiff's counsel awarded $26,120.40 in fees where underlying matter was settled for $1,000 under the FDCPA and $1,000.00 under the California Rosenthal Act); *see also* Exhibit F to Plaintiff's Appendix (pp.70-122); fee awards in *Contreras v. Regent Asset Management Solutions* (Central District of California) (pp70-78), *Harris v. Becks Creek Industries, Inc.* (Central District of California) (pp. 79-82), *Edwards v. Midpoint Resolutions Group* (Central District of California) (pp. 83-95), *Jogiel v. Financial Management Services, Inc.* (Central District of California) (pp. 96-

---

[3] The column headed "Experience" refers to the years following the attorney's graduation from law school. The various

98), *Wamsley v. Creditors Interchange Receivables Management* (Southern District of Ohio) (pp. 99-103), *Renninger v. Phillips & Cohen Associates, Ltd.* (Middle District of Florida) (pp. 104-112), and *Wilkinson v. I.C. System, Inc.* (District of Kansas) (pp. 113-122).

## VII.  IT IS DEFENDANT'S BURDEN TO ESTABLISH ANY REDUCTION IN ATTORNEY'S FEES

The Fifth Circuit has recognized that, when a case is brought under a fee-shifting statute like the FDCPA, a party advocating the reduction of the lodestar amount "bears the burden of establishing that further reduction is warranted."  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) *citing United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990) (awarding $5,500,000.00 in fees on $3 recovery, the court held, "a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified"); *see also Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992); *Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); and *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant"). Accordingly, unless Defendant is able to meet its burden, this Court should accept Plaintiff's lodestar and award the attorney's fees and costs sought.

## VIII.  PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED

Plaintiff seeks $415.00 in litigation costs incurred by Plaintiff.  This amount includes the cost of filing the Complaint in this case, and serving the same on Defendant.  *See* Statement of

---

"brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation) and "senior associates" (4-7 years).  *See Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983).

Services, attached as Exhibit A to Plaintiff's Appendix (pp. 2-3).

## IX. CONCLUSION

Plaintiff was represented free of charge by Plaintiff's attorney at Krohn & Moss, Ltd., a consumer protection law firm that has represented thousands of consumers to date. Pursuant to the public policy considerations behind the fee-shifting provision of the FDCPA as detailed *supra*, Plaintiff respectfully requests that this Honorable Court award Plaintiff's attorney's fees and costs in the amount of $30,547.50.

Dated: December 1, 2011

KROHN & MOSS, LTD.

By: /s/ Adam T. Hill

Adam T. Hill
KROHN & MOSS, LTD.
10 N. Dearborn St., 3rd Fl.
Chicago, Illinois 60602
Telephone: 312-578-9428
Telefax: 866-802-0021
ahill@consumerlawcenter.com
Attorney for Plaintiff
*Appearing pro hac vice*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing on December 1, 2011 to:

Robbie Malone
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
(214)346-2625
Attorney for Defendant

By: /s/ Adam T. Hill

Adam T. Hill

